# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PINEY LAKE OPPORTUNITIES ECI MASTER FUND, L.P., a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br><br>ERIC BLUE, an Individual,<br><br>Defendant. | Case No. _____ |

## COMPLAINT

Now comes Plaintiff, Piney Lake Opportunities ECI Master Fund, L.P. ("PL"), by its undersigned counsel, and for its complaint against Defendant, Eric Blue, respectfully states as follows:

### NATURE OF THE CASE

1. This case concerns Defendant's fraud practiced upon Plaintiff in connection with an asset acquisition strategy through Plaintiff purchased certain unregistered securities.

2. Specifically, PL's claims arise in connection with the proposed purchase by C-PAK Consumer Product Holdings, LLC ("C-PAK") from Proctor & Gamble, Inc. ("P&G") of substantially all of the assets associated with P&G's Joy™ dishwashing liquid consumer product brand (the "Transaction") in or about May, 2019.

3. As the Transaction was originally structured, PL was to fund about two thirds of the $30 million cash Transaction cost (the "Purchase Price") from PL with the balance of

approximately $10 million of the Purchase Price to have been provided in cash by Defendant Blue, either personally or through one of his affiliated entities.

4. Section 1.09(a) of the agreement under which the Transaction was originally negotiated with P&G ("Transaction Agreement") specifies in relevant part that:

> The aggregate purchase price to be paid to Seller in full consideration of the Acquired Assets will be (i) the payment in cash in the amount of USD $30,000,000.00 (thirty million dollars) and (ii) the assumption by Acquiror or one or more of its Affiliates of the Assumed Liabilities.

A true and correct copy of this agreement is attached hereto as **Exhibit A.**

5. To facilitate the Transaction, Blue induced PL to participate in an initial closing on or about May 3, 2019 (the "Initial Closing") in which PL funded approximately $22 million towards the Purchase Price and reserves for C-PAK's post-acquisition operations.

6. As part of the Initial Closing, PL signed a Subscription Agreement dated May 3, 2019 stating that PL was purchasing unregistered securities from C-PAK Consumer Product Holdings SPV I, LLC, an affiliate of C-PAK and Defendant Blue. A true and correct copy of the Subscription Agreement is attached as **Exhibit B**.

7. At some time around the Initial Closing and unbeknownst to PL or any of C-PAK's managers other than Blue, Blue caused C-PAK's counsel, Locke, Lord, LLP, to withdraw without its client's informed consent, leaving C-PAK unrepresented by counsel other than Blue for the remainder of the Transaction.

8. At some time around the Initial Closing and unbeknownst to PL or any of C-PAK's managers other than Blue, Blue caused P&G to materially alter the terms of the Transaction such that P&G would accept a revised Purchase Price consisting of approximately $20,050,000.00 in cash (from the funds invested by PL at the Initial Closing) and a 120 day promissory note for $9,950,000.00 (the "Blue Note") in lieu of any cash being provided by Blue or his affiliates.

2

9. Unbeknownst to PL or any of C-PAK's managers other than Blue, Blue caused C-PAK to participate in a second closing on or about May 13, 2019 (the "Second Closing") at which P&G accepted a revised Purchase Price including the Blue Note (as described above) and Blue or his affiliates were thereby excused from investing any cash as part of the Transaction.

10. By the time it became due, it was evident that the Blue Note was utterly worthless. The Blue Note was defaulted when due, resulting in P&G demanding the balance of the original purchase price from PL.

11. To protect its original investment and to mitigate its damages, PL was then forced to step in and supply the cash necessary to replace the defaulted Blue Note and complete the asset acquisition.

12. Blue's modification of the Purchase Price from all cash to cash plus the Blue Note materially injured PL because PL was induced to invest in the Transaction believing that its investment was limited to its initial contribution and that PL would not almost immediately thereafter be required to increase its investment by nearly $10 million.

13. The terms on which the Transaction actually proceeded were substantially less favorable to PL than the terms that Blue had originally represented to PL to induce its investment and participation in the Transaction.

14. As a result of his aforesaid misconduct and/or other financial wrongdoing, Blue has been forced into involuntary bankruptcy in Dallas Texas.

15. On or about April 29, 2021, the United States Bankruptcy Judge assigned to the Blue bankruptcy in the Norther District of Texas granted PL's Motion to Lift the Automatic Stay to permit the filing of this complaint without violating the bankruptcy code.

**PARTIES**

16.     Plaintiff Piney Lake Opportunities ECI Master Fund, L.P., is a Delaware Limited Liability company with its principal place of business in Greenwich, Connecticut.

17.     Defendant Eric Blue is an individual. On information and belief, Defendant Blue is a citizen of Texas and resides in the Dallas, TX area.

**JURISDICTION AND VENUE**

18.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises at least in part from Defendant Blue's violation of Section 10(b) the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C., § 78j, and SEC Rule 10b-5 thereunder, 17 C.F.R. § 240.l0b-5.

19.     Venue is proper in this district because a substantial part of the events or omissions giving rise to PL's claims occurred here by reason, *inter alia*, of Blue retaining a Chicago-based law firm to facilitate and perform the Second Closing.

**MATERIAL FACTS**

20.     At all relevant times after the Initial Closing on May 3, 2019, C-PAK was managed by its sole member, C-PAK Consumer Product Holdings SPV I ("SPV"), a Delaware Limited Liability Company.

21.     At all relevant times after the Initial Closing on May 3, 2019, SPV was managed by its Board of Managers ("Board") as provided for in Sections 9.1 of its Amended and Restated Operating Agreement dated as of May 3, 2019.

22.     As of May 3, 2019, SPV's Board consisted of three members: Eric Blue, Todd White and Michael C. Cassetta.

23. Despite this structure and in disregard of it, at all relevant times, Defendant Blue continued to act as if he were the sole manager of C-PAK and actively mislead the Board through a combination of misrepresentations and material omissions.

24. On or about May 3, 2019, the Board approved the Transaction Agreement as originally negotiated with P&G.

25. On or about May 3, 2019, PL participated in the Initial Closing at which it invested approximately $23 million to fund approximately $20 million of the $30 million Purchase Price, with the balance provided to fund C-PAK's post-acquisition operations.

26. On and prior to Initial Closing on May 3, 2019, C-PAK had an agreement or understanding with Blue under which he personally, or through one of his affiliates, would provide in cash the additional approximately $10 million balance of the Purchase Price to be paid by C-PAK to P&G at the closing of the Transaction.

27. Prior to the Initial Closing, Blue and/or his agents had represented to PL that Blue would personally, or though and affiliated entity, invest approximately $10 million in cash to facilitate the Transaction.

28. As of the Initial Closing on May 3, 2019, PL, reasonably relying on statements by Blue and/pr his agents, anticipated that Blue would fund the approximately $10 million balance of the Purchase Price in cash required to complete the Transaction.

29. Unbeknownst to PL, as of the Initial Closing, Blue was aware that he was unwilling or unable to fund the balance of the Purchase Price in cash as he had represented and agreed.

30. At all relevant times, Blue concealed from and failed to disclose to PL or C-PAK or its Board the true material facts concerning the Purchase Price.

31. Had PL known the truth about the Transaction's Purchase Price and other material terms on or before the Initial Closing, it never would have participated in the Transaction or made any other investment in connection with it.

32. At some time prior to the Second Closing, Blue negotiated with P&G to modify the Purchase Price from $30 million in cash to $20,050,000 in cash (using funds invested by PL at the Initial Closing) plus the Blue Note in the amount of $9,950,000.

33. At some time prior to the Second Closing, Blue caused C-PAK to join Blue affiliate Capital Park Management Company, LLC ("Capital"), in making the Blue Note. A true and correct copy of the Blue Note dated May 13, 2019, is attached as *Exhibit C*.

34. Blue signed the Blue Note on behalf of Capital as its "Managing Partner."

35. Blue signed the Blue Note on behalf of C-PAK as its "Authorized Signatory."

36. This latter signature was false. The Board never authorized C-PAK to become a maker of the Blue Note or Blue to sign the Blue Note on C-PAK's behalf.

37. Neither PL nor C-PAK's managers other than Blue were aware that Blue had caused C-PAK to make the Blue N0te until months later when the Blue Note defaulted and P&G demanded the balance of the Purchase Price be paid in cash.

38. The course of conduct by Blue in secretly modifying the Purchase Price such that P&G would accept the Blue Note in lieu of cash constituted a fraud by Blue on PL as well as on C-PAK.

## COUNT I

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 THEREUNDER

39. Plaintiff repeats and realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

40. Defendant Blue, by engaging in the conduct described above, directly or indirectly in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud PL;

   b. made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

   c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

41. By engaging in the conduct described above, the Defendant Blue violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

42. As a direct or proximate cause of Defendant Blue's violation of Section 10(b) and Rule 10b-5, Plaintiff PL has suffered significant damages in an amount to be shown at trial, but in any event, are greater than one million dollars.

## COUNT II

### COMMON LAW FRAUD

43. Plaintiff repeats and realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

44. Defendant Blue, by engaging in the conduct described above, directly or indirectly and with scienter:

   a. made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

b.  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

45. As a direct or proximate cause of Defendant Blue's common law fraud, Plaintiff PL has suffered significant damages in an amount to be shown at trial, but in any event, are greater than one million dollars.

*Wherefore*, Plaintiff Piney Lake Opportunities ECI Master Fund, L.P., respectfully requests that this Court find in its favor and against Defendant Eric Blue, as follows:

A.  Award Plaintiff all compensatory damages;

B.  Award Plaintiff punitive damages, including the costs of this action as well as attorneys' fees, expert fees, and any other expenses reasonably incurred in the litigation of this matter as a result of Defendants' wrongful conduct;

C.  Award Plaintiff prejudgment interest; and

D.  Award Plaintiff such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff PL requests a trial by jury on all claims that may so be tried.

Dated: April 30, 2021                Respectfully submitted,

**Piney Lake Opportunities ECI Master Fund, L.P.,**
*Plaintiff*

By:    */s/ Thomas C. Cronin*
         *One of its Attorneys*

Thomas C. Cronin
tcc@cronincoltd.com
Leland W. Hutchinson
lwhutch@gmail.com
CRONIN & CO., LTD.
120 North La Salle, 20th Floor
Chicago, IL 60602
312.500.2100

8