*Execution Version*

# C-PAK CONSUMER PRODUCT HOLDINGS SPV I, LLC
# SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "**Agreement**") is made as of May 3, 2019, by and between C-PAK Consumer Product Holdings SPV I LLC, a Delaware limited liability company (the "**Company**") and the undersigned (hereinafter "**Subscriber**"). Certain capitalized terms not otherwise defined herein have the meanings given them in the form of Amended and Restated Limited Liability Company Agreement of the Company, by and among the Company and each person party thereto, attached hereto as Exhibit A (such form, once executed and delivered by the undersigned and as may be amended or restated in accordance with its terms, the "**LLC Agreement**") and the form of Investors' Rights Agreement, by and among the Company and each person party thereto, attached hereto as Exhibit B (such form, once executed and delivered by the undersigned and as may be amended or restated in accordance with its terms, the "**IRA**").

The Company and Subscriber are executing and delivering this Agreement in reliance upon the exemption from securities registration afforded by Rule 506 of Regulation D ("**Regulation D**") as promulgated by the Securities and Exchange Commission (the "**SEC**") under the Securities Act of 1933, as amended (the "**Act**") and Section 4(a)(2) of the Act.

In connection with this subscription, Subscriber and the Company agree as follows:

1. Purchase and Sale of the Securities.

(a) The Company hereby agrees to issue and to sell to Subscriber, and Subscriber hereby agrees to purchase from the Company, a number of Common Units (the "**Securities**") of the Company set forth on Schedule A as consideration for entering into the Loan Agreement. At the Closing (as defined below), the Company shall issue and deliver to Subscriber the Securities.

(b) The closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place on the closing date (the "**Closing Date**") of the transactions contemplated by the Loan Agreement.

(c) On the Closing Date: (1) the Company shall deliver to or as directed by Subscriber (i) a fully executed complete copy of this Agreement, (ii) a fully executed complete copy of the LLC Agreement, inclusive of Schedule A thereto and (iii) a fully executed complete copy of the IRA; and (2) Subscriber shall deliver or cause to be delivered to the Company (i) its signature page to the LLC Agreement and (ii) its signature page to the IRA.

2. Representations and Warranties of Subscriber. Subscriber represents and warrants to the Company as follows:

(a) Subscriber is an "accredited investor" as defined by Rule 501 of Regulation D promulgated under the Act, and Subscriber is capable of evaluating the merits and risks of Subscriber's investment in the Company and has the capacity to protect Subscriber's own interests.

(b) Subscriber understands that the Securities are not presently registered under the Act and may never become registered under the Act. Subscriber acknowledges that the

Securities cannot be sold, transferred, pledged, hypothecated, assigned or otherwise disposed of, unless such Securities are registered under the Act, or such sale, transfer, pledge, hypothecation, assignment or disposition is exempt from such registration requirements.  The Subscriber understands that it may have to hold the Securities for an indefinite period of time and that the Subscriber might have to bear the complete economic loss of its investment in the Company.

(c) Subscriber acknowledges and understands that the Securities are being purchased for investment purposes and not with a view to distribution or resale, nor with the intention of selling, transferring or otherwise disposing of all or any part thereof for any particular price, or at any particular time, or upon the happening of any particular event or circumstances, except selling, transferring, or disposing the Securities in full compliance with all applicable provisions of the Act, the rules and regulations promulgated by the SEC thereunder, and applicable state securities laws.  Subscriber acknowledges and understands that an investment in the Securities is not a liquid investment.

(d) Subscriber acknowledges that none of the Securities are publicly traded securities. Subscriber acknowledges and understands that there is no public market for any of the Securities and no assurance can be given that any public market will ever develop or if developed that any such market will be sustained.

(e) Subscriber acknowledges that Subscriber has had the opportunity to ask questions of, and receive answers from the Company or any person acting on the Company's behalf concerning the Company and its business and to obtain any additional information, to the extent possessed by the Company (or to the extent it could have been acquired by the Company without unreasonable effort or expense) necessary to verify the accuracy of the information received by Subscriber.  In connection therewith, Subscriber acknowledges that Subscriber has had the opportunity to discuss the Company's business, management and financial affairs with the Company's management or any person acting on its behalf.  Subscriber has received and reviewed the LLC Agreement and all the information, both written and oral, that it desires.

(f) Subscriber has all requisite legal and other power and authority to execute and deliver this Agreement and to carry out and perform Subscriber's obligations under the terms of this Agreement.  This Agreement constitutes a valid and legally binding obligation of Subscriber, enforceable in accordance with its terms, and subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other general principals of equity, whether such enforcement is considered in a proceeding in equity or law.

(g) Subscriber has carefully considered and has discussed with the Subscriber's professional legal, tax, accounting and financial advisors, to the extent the Subscriber has deemed necessary, the suitability of this investment and the transactions contemplated by this Agreement, including, whether the acquisition of the Securities will result in any adverse tax consequences to the Subscriber, for the Subscriber's particular federal, state, local and foreign tax and financial situation and has determined that this investment and the transactions contemplated by this Agreement are a suitable investment for the Subscriber.  Subscriber relies solely on such advisors and not on any statements or representations of the Company, or its agents.  Subscriber understands that Subscriber (and not the Company) shall be responsible for

2

Subscriber's own tax liability that may arise as a result of this investment or the transactions contemplated by this Agreement.

(h) There are no actions, suits, proceedings or investigations pending against Subscriber or Subscriber's properties before any court or governmental agency (nor, to Subscriber's knowledge, is there any threat thereof) which would impair in any way Subscriber's ability to enter into and fully perform Subscriber's commitments and obligations under this Agreement or the transactions contemplated hereby.

(i) The execution, delivery and performance of and compliance with this Agreement, and the issuance of the Securities will not result in any material violation of, or conflict with, or constitute a material default under, any of Subscriber's certificate of formation or other organizational charter document or bylaws, partnership agreement or operating agreement, if applicable, or any of Subscriber's material agreements, nor result in the creation of any mortgage, pledge, lien, encumbrance or charge against any of the assets or properties of Subscriber or the Securities.

(j) Subscriber understands that the merits of the Securities have not been passed upon by the SEC nor any state securities commission, nor has the SEC nor any state securities commission opined upon the accuracy or adequacy of this Agreement or the LLC Agreement and recognizes that no federal, state or foreign agency has recommended or endorsed the purchase of the Securities.

(k) Subscriber is aware that the Securities are and will be, when issued, "restricted securities" as that term is defined in Rule 144 of the general rules and regulations under the Act.

(l) Subscriber represents that Subscriber is not subscribing for Securities as a result of or subsequent to any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over the Internet, television or radio or presented at any seminar or meeting.

3. <u>Representations and Warranties of the Company</u>. Each of the representations and warranties made by the Company to the Agents (as defined in the Loan Agreement) and the Lenders (as defined in the Loan Agreement) under the Loan Agreement are incorporated by reference into this Agreement as if fully set forth herein. The Company further represents and warrants to Subscriber as follows:

(a) The Company is duly organized and validly existing as a limited liability company in good standing under the laws of the State of Delaware.

(b) The Company has all such limited liability company power and authority to enter into, deliver and perform this Agreement.

(c) Immediately after the consummation of the Closing, the issued and outstanding equity securities of the Company shall be as set forth on Exhibit A of the LLC Agreement. As of the Closing, the Company shall not have outstanding any securities convertible or exchangeable for any equity securities of the Company or containing any profit participation features, nor shall it have outstanding any rights or options to subscribe for or to purchase its equity securities or

any securities convertible into or exchangeable for its equity securities or any equity appreciation rights or phantom equity plans other than pursuant to and as contemplated by this Agreement, the LLC Agreement or the IRA. After giving effect to the Closing, the Company shall not be subject to any obligation (contingent or otherwise) to repurchase or otherwise acquire or retire any of its equity securities or any warrants, options or other rights to acquire its equity securities other than pursuant to and as contemplated by the LLC Agreement or the IRA. After giving effect to the Closing, all of the Company's outstanding equity securities shall be validly issued.

(d) There are no statutory or, to the Company's knowledge, contractual securityholders preemptive rights or rights of refusal with respect to the issuance of the Securities hereunder, except as expressly contemplated in the LLC Agreement, the IRA or as provided herein. Based in part on the investment representations of the Subscriber in Section 2 hereof, the Company has not violated any applicable federal or state securities laws in connection with the offer, sale or issuance of any of its equity securities, and the offer, sale and issuance of the Securities hereunder do not and will not require registration under the Act or any applicable state securities laws. To the Company's knowledge, there are no agreements between the Company's members with respect to the voting or transfer of the Company's equity securities or with respect to any other aspect of the Company's affairs, except for the LLC Agreement and the IRA.

(e) All necessary limited liability company action has been duly and validly taken by the Company to authorize the execution, delivery and performance of this Agreement by the Company, and the issuance and sale of the Securities to be sold by the Company pursuant to this Agreement. This Agreement has been duly and validly authorized, executed and delivered by the Company and constitutes the legal, valid and binding obligation of the Company enforceable against the Company in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

4. Indemnification. Subscriber agrees to indemnify and hold harmless the Company, its managers, members, officers, directors, employees, stockholders, agents, counsel and affiliates, and any person acting on behalf of the Company, from and against any and all damage, loss, liability, cost and expense (including reasonable attorneys' fees) ("**Loss**") which any of them may incur by reason of the failure by Subscriber to fulfill any of the terms and conditions of this Agreement, or by reason of any breach of the representations and warranties made by Subscriber herein, or in any other document provided by Subscriber to the Company. The Company agrees to indemnify and hold harmless Subscriber, its managers, members, officers, directors, employees, stockholders, agents, counsel and affiliates, and any person acting on behalf of Subscriber, from and against any and all Loss which any of them may incur by reason of the failure by the Company to fulfill any of the terms and conditions of this Agreement, or by reason of any breach of the representations and warranties made by the Company herein, or in any other document provided by the Company to Subscriber. All representations, warranties and covenants of each of Subscriber and the Company contained herein shall survive the acceptance of this subscription.

5. Miscellaneous.

4

(a) Neither the Company nor the Subscriber may transfer or assign this Agreement or any of either the Company's or the Subscriber's interest herein except as set forth in the LLC Agreement, and each party further agrees that the transfer or assignment of the Securities acquired pursuant hereto shall be made only in accordance with all applicable laws and the LLC Agreement.

(b) This Agreement shall be binding upon Subscriber's and the Company's respective successors and permitted assigns.

(c) This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and may be amended only by a written execution by all parties.

(d) Any notice or other document required or permitted to be given or delivered to the Subscriber shall be in writing and sent (i) by e-mail if the sender on the same day sends a confirming copy of such notice by a recognized overnight delivery service (charges prepaid), or (b) by registered or certified mail with return receipt requested (postage prepaid) or (c) by a recognized overnight delivery service (with charges prepaid).

If to the Company, at:

C-PAK Consumer Product Holdings SPV I LLC
8117 Preston Road, Suite 300
Dallas, TX 75225
Attention: Eric Blue
Email: eric.blue@capitalpark.net

With a mandatory copy, which shall not constitute notice, to:

Locke Lord LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Attention: Arthur Anthony
Email: aanthony@lockelord.com

If to the Subscriber, at its address set forth on <u>Schedule A</u>, or such other address as it shall have specified to the Company in writing, with a copy (which shall not constitute notice) to the copy address set forth on <u>Schedule A</u>.

(e) Failure of a party to exercise any right or remedy under this Agreement or any other agreement between the Company and the Subscriber, or otherwise, or delay by the Company or the Subscriber, as applicable, in exercising such right or remedy, will not operate as a waiver thereof. No waiver by a party will be effective unless and until it is in writing and signed by either the Company the Subscriber, as applicable.

(f) This Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of New York (without regard to principles of conflicts of

5

laws thereof), and shall be binding upon the Subscriber, the Subscriber's heirs, estate, legal representatives, successors and assigns and shall inure to the benefit of the Company, its successors and assigns.

(g) Any legal suit, action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby may be brought in any New York state court or federal court of the United States of America sitting in the borough of Manhattan in the State of New York, and appellate courts therefrom.  The parties hereto irrevocably and unconditionally:  (a) submit to the jurisdiction of such courts and agree to take any and all future action necessary to submit to such jurisdiction; (b) waive any obligation which they may now or hereafter have to the venue of any suit, action or proceeding brought in such courts; and (c) waive any claim that any such suit, action or proceeding brought in such court has been brought in an inconvenient forum.

(h) If any provision of this Agreement is held to be invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed modified to conform to such statute or rule of law.  Any provision hereof that may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provisions hereof.

(i) The parties understand and agree that money damages would not be a sufficient remedy for any breach of the Agreement by the Company or the Subscriber and that the party against which such breach is committed shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach.  Such remedies shall not be deemed to be the exclusive remedies for a breach by either party of the Agreement but shall be in addition to all other remedies available at law or equity to the party against which such breach is committed.

(j) All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, singular or plural, as identity of the person or persons may require.

(k) This Agreement may be executed in counterparts and by facsimile, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

[Signature Page Follows]

IN WITNESS WHEREOF, Subscriber has caused this Subscription Agreement to be executed as of the date indicated below.

**PINEY LAKE OPPORTUNITIES ECI MASTER FUND LP**

By: Piney Lake Capital Management LP, as Advisor

By: */s/ Michael B. Lazar*
Name: Michael B. Lazar
Title: President

May 3, 2019
Date

[*Signature page to C-Pak Consumer Product Holdings SPV I, LLC Subscription Agreement*]

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed, and the foregoing subscription accepted, as of the date first above written.

> C-PAK CONSUMER PRODUCT
> HOLDINGS SPV I, LLC
>
> By: _____
> Name: Eric C. Blue
> Title: Manager

[*Signature page to C-Pak Consumer Product Holdings SPV I, LLC Subscription Agreement*]

**SCHEDULE A**

| **Member** | **Number of Units** | **Purchase Price**[1] |
|---|---|---|
| **Piney Lake Opportunities ECI Master Fund LP**<br><br>Four Greenwich Office Park<br>Greenwich, CT 06831<br>Attention: Michael C. Cassetta<br>Facsimile No.: (203) 307-5988<br>Email: notices@piney-lake.com<br><br>With a mandatory copy, which shall not constitute notice, to:<br><br>Proskauer Rose LLP<br>One International Place<br>Boston, MA 02110<br>Attn: Peter J. Antoszyk<br>Facsimile No.: (617) 526-9899<br>Email: pantoszyk@proskauer.com | 1,000 Common Units | $907,954.40 |

---

[1] Represents the value allocated to the common units, which are being issued in exchange for Subscriber entering into the Loan Agreement.

## **EXHIBIT A**

LLC Agreement

[Attached]

## **EXHIBIT B**

IRA

[Attached]